**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Gordon Grado M.D., Inc. d/b/a Southwest
Oncology Centers,

        Plaintiff,

v.

Phoenix Cancer and Blood Disorder
Treatment Institute PLLC; and Steven L.
Rosinski,

        Defendants.

No. CV-21-02052-PHX-DGC

**ORDER**

      Defendants Phoenix Cancer and Blood Disorder Treatment Institute, PLLC ("PCI") and Steven L. Rosinksi, M.D. have moved to dismiss Plaintiff Gordon Grado, M.D., Inc., d/b/a Southwest Oncology Centers' second amended complaint.  Doc. 18.  The motion is fully briefed (Docs. 18, 20, 21), and oral argument will not aid the Court's decision.  *See* LRCiv 7.2(f).  For reasons stated below, the Court will deny the motion in part.

**I.**     **Background.**

      Dr. Gordon Grado is a physician specializing in radiation oncology and the founder, director, and president of Plaintiff Southwest Oncology Centers, which provides radiation and medical oncology services to cancer patients in Scottsdale, Bullhead City, and Yuma, Arizona.  Doc. 14 ¶¶ 3-5.  Defendant Dr. Steven Rosinski is a physician specializing in internal medicine, hematology, and oncology and founder of Defendant PCI, which provides radiation and medical oncology services to cancer patients in Bullhead City, Arizona.  *Id.* ¶¶ 7-10.

Plaintiff alleges that in 2017, Defendant Rosinski was practicing medicine in Spokane, Washington, and planning to move to Arizona. *Id.* ¶¶ 34-35. In November 2017, Plaintiff and Defendant Rosinski began communications and employment negotiations. *Id.* ¶ 37. In March 2018, Plaintiff and Defendant Rosinski entered into a *locum tenens* agreement (the "Agreement") under which Defendant Rosinski would work part time as an independent contractor for Plaintiff in its Bullhead City location. *See id.* ¶¶ 44-46. After approximately ten months, Defendant Rosinski gave notice of his intent to terminate the Agreement, stopped providing services for Plaintiff, and opened Defendant PCI, where he continued to provide cancer treatment services to patients in Bullhead City. *Id.* ¶¶ 46, 63.

Plaintiff alleges that prior to entering into the Agreement, Defendant Rosinski had a plan to establish his own partnership and medical practice in Arizona. *Id.* ¶ 35. Plaintiff alleges that, unbeknownst to it, Defendant Rosinski sought employment with it in order to learn about the medical oncology care market in Arizona, establish a name presence in Arizona, identify and hire away experienced employees, and identify and persuade away patients, all in furtherance of his desire to open his own medical practice in the area. *Id.* ¶ 36. Despite this, Plaintiff alleges that Defendant Rosinski, personally and through a letter of recommendation, represented that he wanted to join Plaintiff's practice for the "long term." *Id.* ¶¶ 42-43. Plaintiff asserts that Defendant Rosinski's purported interest in joining its practice for the "long term" was material and induced it to employ Defendant Rosinski under the Agreement. *Id.* ¶ 44. Plaintiff alleges that Defendant Rosinksi continued to represent to Plaintiff that he wanted a "long term" employment relationship after entering into the Agreement, and that these representations were material to Plaintiff's decision to maintain Defendant Rosinski's employment under the Agreement. *Id.* ¶¶ 47, 51-53, 59-60, 74.

While continuing to represent that he wanted to join Plaintiff's practice for the "long term," Plaintiff alleges that Defendant Rosinksi: registered the Internet domain name "phoenixcancer.com" (*id.* ¶ 39); filed articles of incorporation for "Phoenix Cancer and Blood Disorder Treatment Institute, PLLC" (*id.* ¶ 48); registered a national provider

identification number for the Phoenix Cancer and Blood Disorder Treatment Institute with the Centers for Medicare and Medicaid Services (*id.* ¶ 50); recruited three of Plaintiff's employees to work for Defendant PCI (*id.* ¶¶ 54-55); directed Plaintiff's former employees, after they had left Plaintiff's employ, to access and download patient information and medical records in order to persuade patients to cease treatment with Plaintiff (*id.* ¶¶ 56-57); directed one of Plaintiff's former employees, while she was still employed by Plaintiff, to tell patients that Plaintiff might close and that they should obtain their medical records in order to convince them to seek treatment with Defendant PCI (*id.* ¶ 58); and filed applications with the U.S. Patent and Trademark Office to trademark the phrase "Phoenix Cancer Institute" and a design logo bearing the same phrase (*id.* ¶ 62).

Plaintiff alleges that Defendant Rosinski gave a 30-day notice of termination as required under the Agreement on January 4, 2019, but that his last day of employment was on January 18, 2019. *Id.* ¶¶ 61, 69. Plaintiff alleges that in communications regarding the termination of Defendant Rosinski's employment, he continued to conceal his plans to open a competing oncology practice in Bullhead City, asserting instead that he was unsure of his future employment plans. *Id.* ¶¶ 63, 64, 69. In the time between giving his notice and the end of his employment, Plaintiff alleges that Defendant Rosinski asked for and received a print-out of his next two weeks of appointments, which included patient phone numbers and insurance information, and used the list to solicit Plaintiff's patients to continue care with Defendant PCI. *Id.* ¶¶ 64-67. Ultimately, Plaintiff alleges, Defendant Rosinski used misappropriated confidential information to successfully solicit 41 of Plaintiff's patients to transfer their care to Defendant PCI. *Id.* ¶ 68.

Plaintiff sues Defendants Rosinski and PCI for fraudulent inducement under Arizona common law (Count I), misappropriation of trade secrets under A.R.S. § 44-401 (Count II) and 18 U.S.C. § 1832 (Count III), and tortious interference with business relationships under Arizona common law (Count V). Plaintiff also brings claims against Defendant Rosinski for breach of contract (Count IV) and breach of the implied covenant of good faith and fair dealing (Count VI) under Arizona common law.

1    **II.     Legal Standard.**

2          When analyzing a complaint for failure to state a claim for relief under

3    Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light

4    most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

5    2009). A successful motion to dismiss under Rule 12(b)(6) must show either that the

6    complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its

7    theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint

8    that sets forth a cognizable legal theory will survive a motion to dismiss as long as it

9    contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

10   plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.*

11   *v. Twombly*, 550 U.S. 544, 570 (2007)).

12   **III.    Defendants' Motion to Dismiss.**

13         Defendants argue that the Court lacks jurisdiction over the only federal claim

14   asserted in Plaintiff's complaint (Count III alleging misappropriation of trade secrets under

15   federal law) and the Court therefore lacks jurisdiction over the entire lawsuit. Defendants

16   also argue that the statute of limitations has run on Plaintiff's tortious interference claim

17   (Count V). Finally, Defendants argue that the rest of Plaintiff's claims fail to state plausible

18   claims for relief.

19         **A.     Misappropriation of Trade Secrets.**

20                **1.     Under Federal Law (Count III).**

21         The Court will first consider Defendants' arguments regarding Plaintiff's claim for

22   federal misappropriation of trade secrets because it is the only claim upon which to base

23   supplemental jurisdiction.

24                      **a.     Jurisdiction.**

25         Defendants argue that there is no basis for original federal jurisdiction over

26   Plaintiff's federal misappropriation claim because the trade secrets involved are not

27   sufficiently related to interstate commerce as required by 18 U.S.C. § 1836(b)(1). Doc. 18

28

- 4 -

at 4.[1]  Citing no authority, Defendants argue that this jurisdictional requirement is "highly restrictive" and that it would be "impossible" for Plaintiff to demonstrate that the information at issue in this case "in any way involved interstate commerce." *Id.* Defendants assert that "[m]edical care for patients located in a small Arizona town most definitely does not implicate interstate commerce" because physicians must be licensed by each state in which they practice, rendering medical care "affirmatively prohibited from being 'interstate commerce.'" *Id.*  Defendants go on to characterize Plaintiff's allegations that patient billing and payment is done across state lines, thereby implicating interstate commerce, as "exceptionally weak" and a "misrepresent[ation of] the kind of confidential information actually at issue." *Id.*  Defendants assert that only patient names and contact information are at issue in this case, arguing that Plaintiff has not sufficiently supported its allegations that billing and insurance information was also improperly obtained by Defendants. *Id.*  Defendants argue that they would have had "no use whatsoever" for billing or insurance records because they would have received that information directly from patients that switched their care to Defendant PCI. *Id.* at 5.  Defendants finally argue that Plaintiff's allegations that it receives payments for the services it renders from out-of-state entities has "too tenuous and distended" a connection with interstate commerce to support federal jurisdiction. *Id.*

Plaintiff responds that the allegations in its complaint adequately allege a connection to interstate commerce because it alleges that the records taken by Defendants included financial and insurance records used to bill out-of-state entities for services and that some of the patients whose records were taken were Nevada residents.  Doc. 20 at 6.  Plaintiff also argues that the jurisdictional statute does not require that the trade secrets themselves be transmitted in interstate commerce, but only that they are related to a product or service used in interstate commerce. *Id.* at 6-7.  The records at issue, Plaintiff argues, were related to both medical services provided in interstate commerce and financial services – that is,

---

[1] Defendants also argue that Plaintiff cites an inapplicable statute as the basis for federal jurisdiction.  Doc. 18 at 3.  Plaintiff's second amended complaint, however, properly cites § 1836(b) and (c) as the basis for federal jurisdiction. *See* Doc. 14 ¶ 1.

insurance billing – provided in interstate commerce.  *Id.* at 7.  Finally, Plaintiff argues that many of Defendants' arguments are factual disputes inappropriate for resolution on a 12(b)(6) motion but that, even if Defendants had no need to take financial records specifically, the information was still valuable to Defendants because it indicated who Defendants should solicit.  *Id.* at 7-8.

Defendants respond by acknowledging case law stating that the product or service, not necessarily the trade secret itself, must be related to interstate commerce, but argue that no financial services are rendered by Plaintiff, only medical services, "which <u>must be</u> limited to a single state."  Doc. 21 at 3 (emphasis in original), *id.* at 4.  Defendants also argue that any records obtained from Plaintiff were not used for billing purposes because such information was provided by patients at the time of treatment.  *Id.* at 4.  Defendants assert that the records would not have provided leads on which patients to solicit because Defendant Rosinski was already aware of the identities of patients he was treating when he left Plaintiff's employ and Plaintiff's employee voluntarily provided him with his patient schedule which included patient phone numbers.  *Id.*

Under the Defend Trade Secrets Act ("DTSA"),[2] "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).  The statute confers original jurisdiction on U.S. district courts.  *Id.* § 1836(c). There is some dispute among courts about whether the interstate-commerce requirement is jurisdictional or merely an element of a misappropriation claim brought under DTSA.  *See*, *e.g.*, *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 598 (E.D. Tex. 2021) (concluding that the interstate-commerce requirement is not jurisdictional but acknowledging contrary findings among other district courts and collecting cases).  This issue has not been resolved by the Ninth Circuit or, to the Court's knowledge, any other

---

[2] In briefing, the parties primarily refer to this provision as the Economic Espionage Act ("EEA").  The EEA creates federal criminal liability for the misappropriation of trade secrets and § 1836 is its civil analogue.  While § 1836 is codified within the EEA, it is more commonly referred to as the DTSA.

circuit.[3]   District courts in this circuit have tended to treat the interstate-commerce requirement as jurisdictional.  *See*, *e.g.*, *Islands Hospice, Inc. v. Duick*, No. 19-00202-JMS-WRP, 2019 WL 4620369, at *3 (D. Haw. Sept. 23, 2019) (citing *Agrawal*); *ReBath LLC v. HD Sols. LLC*, No. CV-19-04873-PHX-JJT, 2020 WL 7000071, at *2 (D. Ariz. Sept. 18, 2020).  Defendants assert that the interstate-commerce requirement of the DTSA is jurisdictional.  Doc. 18 at 3-4.  Plaintiff does not dispute that assertion.  Doc. 20 at 6.  The Court therefore will assume for purposes of this order that the requirement is jurisdictional.

Plaintiff has sufficiently pled a nexus between its federal misappropriation claim and interstate commerce.  Plaintiff alleges that some of its patients – and indeed three of the patients it alleges were solicited by Defendants using misappropriated information – were Nevada residents.  Doc. 14 ¶¶ 33(a), 68.  "At least some of [Plaintiff's] patients travel from [Nevada] into [Arizona] to use [its] services and therefore those services are used in interstate commerce."  *Yager v. Vignieri*, No. 16cv9367(DLC), 2017 WL 4574487, at *2 (C.D. Cal. Aug. 7, 2018); *see also Officia Imaging, Inc. v. Langridge*, No. SA CV 17-2228-DOC (DFMx), 2018 WL 6137183, at *7 (C.D. Cal. Aug. 7, 2018) (holding allegation that services were coordinated and processed in Nevada for California customers "alone sufficiently satisfies the interstate commerce nexus requirement").  Defendant neither acknowledges this allegation nor explains why interstate commerce is not involved when citizens of Nevada travel across state lines to receive medical services in Arizona.

Defendants argue that because physicians must be "separately licensed in any state in which they wish to practice medicine," the provision of medical care is "affirmatively prohibited from being 'interstate.'" and "<u>must be</u> limited to a single state."  Docs. 18 at 4, 21 at 3 (emphasis in original).  But these conclusory assertions are belied by caselaw, some of which is cited below, acknowledging that the provision of medical services can be and often is in interstate commerce.  Defendants proffer nothing – be it caselaw or information

---

[3] The Second Circuit in *United States v. Agrawal*, 726 F.3d 235 (2d Cir. 2013), found that the interstate-commerce requirement of a prior version of the EEA was jurisdictional, but the court had "no occasion to construe the revised [statute]."  *Id.* at 244 n.7.

that the Court could take judicial notice of – to show that medical licensing schemes remove physicians from interstate commerce.  Plaintiff, on the other hand, pleads with specificity that it treats out-of-state patients in its Arizona facility and that Defendants successfully solicited several of its out-of-state patients.  This is sufficient to satisfy the interstate-commerce requirement of the DTSA.

Further, courts routinely hold in other contexts that "accepting payment from Medicare constitutes an act in interstate commerce."  *Wound Care Concepts, Inc. v. Vohra Health Servs., P.A.*, No. 19-62078-CIV-SMITH, 2022 WL 320952, at \*12 (S.D. Fla. Jan. 28, 2022) (considering interstate commerce in Lanham Act context); *see also Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 327 (1991) (holding that "[t]he provision of ophthalmological services affects interstate commerce because both physicians and hospitals serve nonresident patients and receive reimbursement through Medicare payments" in Sherman Act context); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at \*8 (W.D. Ky. Dec. 19, 2013) (holding that plaintiff nursing home "has a nexus with interstate commerce through their and their patients' participation in Medicare and Medicaid" in Federal Arbitration Act context).  Plaintiff here has also alleged that it received payments through Medicare and Medicaid and, of the patients it alleges were successfully solicited by Defendants using misappropriated information, 20 were Medicare beneficiaries, four were enrolled in Medicare Advantage plans, and nine were Medicaid recipients.  Doc. 10 ¶¶ 33(c)-(e), 68.

Defendants argue that Plaintiff's reliance on Medicare and Medicaid billing is unavailing because it "misrepresents the kind of confidential information actually at issue." Doc. 18 at 4.  Defendants assert that the information at issue is only patient names and contact information and that Plaintiff "hasn't alleged even the tiniest shred of support for its naked and conclusory allegations that any Defendant at any time misappropriated billing or insurance records."  *Id.*  Plaintiff specifically alleges, however, that Defendants misappropriated patients' billing and insurance records.  Doc. 10 ¶¶ 30, 56-58, 65. Defendants' assertions that those records were not misappropriated is a factual issue

inappropriate for resolution on a motion to dismiss.  Such issues should be resolved on summary judgment or at trial when both parties can submit evidence to support their allegations.  On this motion, the Court must take Plaintiff's well-pled factual allegations as true.  *Cousins*, 568 F.3d at 1067.

### b.    Failure to State a Claim.

To state a claim under the DTSA, Plaintiff must allege (1) that it owns a trade secret, (2) that was misappropriated by Defendants, (3) causing damages.  *ReBath LLC*, 2020 WL 7000071, at *2.  Defendants' motion to dismiss does not argue that Plaintiff failed to allege that it owns a trade secret or suffered damages, focusing instead on whether Plaintiff has adequately alleged misappropriation.  Docs. 18 at 7, 21 at 6.[4]

Misappropriation under the DTSA is defined as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who--

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

---

[4] Defendants hint that the information at issue does not constitute a trade secret, but do not develop that argument as a ground for dismissal, focusing entirely on the argument that Plaintiff did not assert any act of misappropriation.  *See* Docs. 18 at 7-11; 21 at 7.  Defendants also state briefly that Plaintiff did not "me[e]t its obligation to maintain the secrecy of this information in order to qualify it as a trade secret under A.R.S. § 44-401.4" because Plaintiff did not keep passwords sufficiently secure.  Doc. 18 at 10.  This argument is premised on a factual issue inappropriate for resolution on summary judgment.  *See Wound Care Concepts*, 2022 WL 320952, at *10 ("However, the question of whether information constitutes a trade secret is a question of fact normally resolved by a jury after full presentation of evidence.") (citing *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1290, 1291 (11th Cir. 2003)); *Leoni Fiber Optics, Inc. v. Kaus*, No. CV-13-562-PHX-SMM, 2013 WL 12106942, at *4 (D. Ariz. June 14, 2013) (considering misappropriation under Arizona state law and finding that arguments as to secrecy of alleged trade secret was "a question of fact" and therefore "without merit on this motion to dismiss").

- 9 -

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that--

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake[.]

18 U.S.C. § 1839(5)(A)-(B).  "Improper means" include theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means, but not reverse engineering, independent derivation, or other lawful means of acquisition.  § 1839(6)(A)-(B).

Defendants argue that Plaintiff has failed to allege any wrongful conduct that could constitute misappropriation.  Doc. 18 at 7.  Defendants emphasize that paragraphs 56-58 of Plaintiff's complaint,[5] while containing "allegations that one could arguably assert relate in some way to some form of misappropriation," describe conduct "done entirely and exclusively by third parties, and not by any Defendant."  *Id.* at 8 (emphasis omitted). Defendants assert that "[i]t should be obvious that Defendants cannot be held accountable for the conduct of third parties."  *Id.*  Defendants also assert that Plaintiff's allegations that Defendant Rosinski directed the conduct are "wildly unsupported and conclusory."  *Id.* at 9.  Defendants go on to dispute whether or when certain of Plaintiff's prior employees came to work for Defendant PCI and question whether the employees would have had any motive to misappropriate information on Defendants' behalf.  *Id.*  Defendants also heavily rely on Plaintiff's allegations that some patients solicited by Defendants also requested their own medical records from Plaintiff, arguing that this fact "demonstrates conclusively that the transfer of their records and care was handled in the appropriate and proper manner."  *Id.* at 9-10.  Defendants also emphasize that one of Plaintiff's employees

---

[5] These paragraphs contain allegations that, at Defendant Rosinski's direction, two of Plaintiff's former employees accessed proprietary data systems after leaving Plaintiff's employ and downloaded patient records, and that another employee, while still employed by Plaintiff, falsely told patients that Plaintiff might be closing and encouraged patients to obtain copies of their medical records.  Doc. 14 ¶¶ 56-58.

voluntarily provided Defendant Rosinski with a list of patients for him to call and inform that he was leaving Plaintiff's employ. *Id.* at 10. Finally, Defendants argue that Plaintiff's allegation that Defendant Rosinski contacted one of Plaintiff's patients about lab results does not show that he misappropriated the patient's records, but rather that Plaintiff failed to remove Defendant Rosinski from the paperwork generated for lab orders. *Id.*

Plaintiff has plausibly pled acts of misappropriation by Defendant Rosinski. The second amended complaint alleges that Defendant Rosinski instructed Plaintiff's former employees to access proprietary systems and download patient information that Plaintiff alleges are trade secrets. Doc. 14 ¶¶ 56-57. Plaintiff also alleges that Defendant Rosinski instructed another of Plaintiff's employees to mislead patients into thinking Plaintiff may stop providing medical services in order to induce them to give him access to their confidential information. *Id.* ¶ 58. Defendants cite no authority to suggest that these actions could not fall within the statutory definition of misappropriation. And, despite the unsupported assertion that it is "obvious" that they could not be liable for actions of third parties, the factual allegations of the complaint must be taken as true at this stage and the definition of misappropriation set out above clearly contemplates the involvement of third parties in acts of misappropriation.

Defendants assert that Plaintiff's allegations that its former employees took these actions at Defendant Rosinski's direction are "wildly unsupported and conclusory" (Doc. 18 at 9), but Plaintiff made these allegations "upon information and belief" (Doc. 14 ¶ 57), which is sufficient at the pleadings stage, especially where other factual allegations support an inference of direction. *See NW Monitoring LLC v. Hollander*, 534 F. Supp. 3d 1329, 1338 (W.D. Wash. 2021) (information and belief allegations can support misappropriation where additional facts support adequate inferences). Defendants make many factual arguments against the inference of direction by Defendant Rosinski, including contesting whether and when Plaintiff's former employees came to work for Defendant PCI, whether the employees had motives to misappropriate information on Defendant Rosinski's behalf, and whether the medical records were obtained solely

1  through the patients themselves.  But these factual arguments cannot be resolved on a

2  motion to dismiss where the Court is confined to the pleadings, must accept them as true,

3  and must draw inferences in favor of the non-moving party.

4              **c.      Defendant PCI.**

5            Defendants argue that Defendant PCI is not an appropriate defendant for two

6  reasons: first, because it was not formed until July 13, 2018, after "the vast majority of the

7  affirmative conduct alleged by Plaintiff" and was still "yet-to-be opened" in December of

8  2018, when the alleged acts of misappropriation happened; and second, because the

9  complaint does not allege any affirmative conduct on the part of Defendant PCI, but only

10  by Defendant Rosinski and other third parties.  Doc. 18 at 14.[6]

11           Plaintiff responds that Defendant PCI is liable for the acts of Defendant Rosinski

12  taking place after its formation because he acted not only on his own behalf but on behalf

13  of Defendant PCI, of which he was one of two members.  Doc. 20 at 13-14.  Plaintiff asserts

14  that Defendant PCI is liable under a vicarious liability theory.  *Id.*

15           "It is well established that traditional vicarious liability rules ordinarily make

16  principals or employers vicariously liable for the acts of their agents or employees in the

17  scope of their authority or employment."  *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  A

18  business entity may be liable for intentional torts committed by an agent or employee, such

19  as misappropriation of trade secrets, even if the business has not authorized the activity, so

20  long as the activity falls within the scope of the agency or employment.  *Brain Injury Ass'n*

21  *of Cal. v. Yari*, No. CV 19-5912-MWF (JCx), 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30,

22  2020).  Conduct is considered within the scope of employment when it is performed, at

23  least in part, to benefit the employer.  *Id.* at *5.

24           Plaintiff has plausibly pled misappropriation liability of Defendant PCI.  It is

25  undisputed that Defendant PCI came into existence on July 13, 2018.  *See* Docs. 18 at 14,

26  14 ¶ 48, 14-2 at 2 (articles of incorporation).  The alleged acts of misappropriation took

27  ─────────────────
   [6] Defendants make these arguments once in their brief, but apply them to each count

28  Plaintiff brings against Defendant PCI.  Doc. 18 at 14-15.  The Court therefore addresses
   these arguments separately for each claim brought against Defendant PCI.

place in November and December of 2018, months after it was formed.  Doc. 14 ¶¶ 56-58.[7]
Plaintiff alleges that Defendant Rosinski directed the acts of misappropriation for the
purpose of convincing Plaintiff's patients to transfer their treatment to Defendant PCI.
Doc. 14  ¶¶ 57-58.   Plaintiff also alleges that Defendant Rosinski acted on behalf of
Defendant PCI.  *See id.* ¶¶ 72, 83.  Plaintiff accordingly has plausibly pled Defendant PCI's
vicarious liability for Defendant Rosinski's alleged misappropriation.  *See*, *e.g.*, *Brain
Injury Ass'n of Cal.*, 2020 WL 3643482, at *6 ("Because BIACAL has alleged that Yari
used information from BIACAL's Master List at least in part for the benefit of BSC, BSC
may be vicariously liable for Yari's alleged misappropriation."); *Cisco Sys., Inc. v. Chung*,
462 F. Supp. 3d 1024, 1057 (N.D. Cal. May 26, 2020) ("Given that Plantronics and Plaintiff
operate in the same industry, the court may reasonably infer that Puorro acquired the
information purportedly taken by Williams to benefit Plantronics.  As a result, plaintiff
adequately alleged that Plantronics misappropriated the information purportedly taken by
Williams under a theory of vicarious liability.").

## 2.    Under Arizona Law (Count II).

Defendants make the same arguments regarding Plaintiff's claim under the Arizona
Uniform Trade Secrets Act ("AUTSA") – that it fails to allege any acts of misappropriation
by Defendants.  *See* Doc. 18 at 7-12.  The definition of "misappropriation" under the
AUTSA is the same as under the DTSA.  *See* A.R.S. § 44-401(2).  For the reasons stated
above, Plaintiff has sufficiently stated its claim under the AUTSA against Defendants
Rosinski and PCI.  *SinglePoint Direct Solar LLC v. Curiel*, No. CV-21-1076-PHX-JAT,
2022 WL 331157, at *14 (D. Ariz. Feb. 3, 2022).

Defendants also argue that Plaintiff's claim under the AUTSA should be dismissed
as a matter of policy.  Doc. 18 at 10-12.  Defendants argue that Arizona law "fully supports
the right of those patients to continue their treatment with their physician of choice," and

---

[7] While paragraph 58 of Plaintiff's second amended complaint acknowledges that
Defendant PCI had "yet-to-be opened," Defendants cite no authority from which the Court
can conclude that an entity that is legally formed but not yet providing services to the public
cannot be liable for the actions of its members.

1   that policy is incompatible with treating patient contact information as trade secrets and

2   prohibiting doctors from informing patients they have moved offices.  *Id.* at 11.

3       This policy argument does not show that Plaintiff's pleadings are deficient.  It rests

4   on Defendants' characterization of Plaintiff's misappropriation claim being based solely

5   on Defendant "Rosinski's phone calls to his own patients" to inform them that he had

6   moved offices.  Doc. 18 at 11-12.  But as discussed above, Plaintiff supports its

7   misappropriation claim with plausible allegations that Defendants improperly obtained

8   trade secret information concerning patients.  Patients remain free to be treated by their

9   physician of choice even when physicians must abide by misappropriation laws.

10      **B.    Fraudulent Inducement (Count I).**

11      Under Arizona law, there are "three distinct classes of fraud: misrepresentation,

12  concealment, and non-disclosure."  *Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 34

13  n.22 (Ariz. 2002).  "Liability for fraudulent misrepresentation . . . lies against one who

14  fraudulently makes a misrepresentation of fact for the purpose of inducing another to act

15  or to refrain from action."  *Id.* (internal quotations and alterations omitted).  A claim of

16  fraudulent inducement under Arizona law requires proof of the nine elements of actionable

17  fraud.  *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1218 (D. Ariz. July 3,

18  2007) (quoting *Lundy v. Airtouch Comm., Inc.*, 81 F. Supp. 2d 962, 968 (D. Ariz. 1999)).[8]

19  The nine elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the

20  speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it

21  be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's

22  ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and

23

24

25      [8] Fraudulent inducement under Arizona law is a type of fraudulent misrepresentation
26  and is sometimes referred to as "fraudulent misrepresentation in the inducement."  *See*,
    *e.g.*, *Gerard v. Kiewit Corp.*, No. 1 CA-CV 19-0479, 2020 WL 3422844, at *3 (Ariz. Ct.
27  App. June 23, 2020).  The elements of fraudulent misrepresentation and fraudulent
    inducement are the same.  *Compare Meritage Homes Corp.*, 522 F. Supp. 2d at 1218
28  (listing nine elements of "fraudulent inducement"), *with Wells Fargo Credit Corp.*, 803
    P.2d at 905 (listing nine elements for "fraudulent misrepresentation").

(9) the listener's consequent and proximate injury.  *Id.* (quoting *Wells Fargo Credit Corp. v. Smith*, 803 P.2d 900, 905 (Ariz. 1990)).[9]

### 1. Defendant Rosinski.

Defendants argue that Plaintiff's fraudulent inducement claim involves conduct that occurred after Defendant Rosinski's employment Agreement was formed.  Doc. 19 at 15.[10] Given this timing, Defendants argue that Plaintiff could not have justifiably relied on Defendants' conduct in entering into the Agreement.  *Id.* (citing *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010)).  The only allegation that predated the Agreement, Defendants argue, is that Defendant Rosinski misled Plaintiff as to his intentions to open a competing practice, and "intent to open a competing business is not wrongful or improper in any way."  *Id.* at 15-16.  Defendants also argue that Defendant Rosinski's intent could not have been material to Plaintiff because Plaintiff could have included a non-compete clause in the Agreement, but chose not to do so.  *Id.* at 16. Defendants also argue that Defendant Rosinski's representations that he intended to work for Plaintiff for the "long term" cannot support its claim because "a claim for fraud cannot be proven merely by unfulfilled promises or expressions concerning future events" unless "supported by evidence that Rosinski intended to deceive Plaintiff at the time that these representations were allegedly made."  *Id.* (emphasis omitted) (citing *McAlister v. Citibank*, 829 P.2d 1253 (Ariz. Ct. App. 1992)).  Defendants assert that Plaintiff does not make "any allegation of any conduct . . . that would in any way support a claim that Defendants intended to deceive Plaintiff prior to the entry of the Agreement."  *Id.* Defendants acknowledge that Plaintiff alleges that Defendant Rosinski registered the domain name "phoenixcancer.com" in 2017, prior to the Agreement, but assert that this

---

[9] Claims grounded in fraud are subject to a heightened pleading standard requiring a plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Defendants do not argue that Plaintiff has not met this standard.  The Court notes that Plaintiff does allege throughout its complaint particular statements made by Defendant Rosinski on particular dates giving rise to its fraud claim.  *See, e.g.*, Doc. 14 ¶¶ 42-43, 47, 49, 52-53, 63-64.

[10] Plaintiff's complaint and exhibits allege that Plaintiff and Defendant Rosinski entered into the Agreement in March 2018.  *See* Docs. 14 ¶ 45, 14-1 at 2-3.  Defendant alleges that they entered into the Agreement on March 4, 2018.  Doc. 18 at 15.

allegation is "simply false" and that registration "did not happen until the end of October of 2018, long after Plaintiff's reliance had already occurred." *Id.* at 18 n.16.

Plaintiff responds that, on the basis of Defendant Rosinski's representations that he wanted to add his practice to Plaintiff's for the "long term," it hired him in March 2018 and kept him employed, with access to its patients, records, and employees, for ten months and paid him approximately $200,000 during that period. Doc. 20 at 15. Plaintiff argues that it was induced to hire Defendant Rosinski on the basis of these representations, which were material to it, but that it was never Defendant Rosinski's intention to work with Plaintiff long term, as shown in part by the registration of the phoenixcancer.com domain in December 2017. *Id.* at 16. Plaintiff also alleges that, following formation of the Agreement, Defendant Rosinski fraudulently induced it to maintain his employment by continuously making Plaintiff believe in his long-term commitment despite secretly pursuing plans to open Defendant PCI by filing articles of organization, registering for a national provider number, hiring Plaintiff's employees away, directing those employees to misappropriate patient information, and applying for trademark protection for marks of Defendant PCI. *Id.* Plaintiff also argues that the absence of a non-compete clause in the Agreement does not mean that Defendant Rosinski's long term intentions were not material to it because it is not suing for breach of such a clause but rather inducement of employment and continued employment based on Defendant Rosinski's "deliberately false and misleading" statements of his intentions. *Id.* at 17.

Defendants respond by reiterating their two "fundamental argument[s]": that Plaintiff only relies on acts that occurred after Plaintiff hired Defendant Rosinski and Plaintiff may not rely exclusively on unfulfilled promises or expressions concerning future events to prove fraud. Doc. 21 at 11. Defendants assert that the only act that Plaintiffs allege prior to entry of the Agreement is the registration of the phoenixcancer.com domain name, an allegation that Defendants continue to assert is "flatly false." *Id.* Defendants attach to their reply brief an exhibit, which appears to be a receipt sent from GoDaddy.com, LLC to Kellie Rosinski, Defendant Rosinski's wife, memorializing payment of domain

registration fees for phoenixcancerinstitute.com and phoenixcancer.com on September 24, 2018.  *See id.* at 15.  Defendants argue that this receipt is a source whose accuracy cannot reasonably be questioned, and the domain registration date can be accurately and readily determined from it and therefore the Court must take judicial notice of the document as disproving Plaintiff's allegation that the domain was registered before the Agreement date.  *Id.* at 2.  Defendants argue that, with this date established, Plaintiff has no evidence "establishing any conduct of any sort by Defendants that predate the relevant events in this case."  *Id.* at 3.

The Court declines to take judicial notice of the receipt offered by Defendants.  First, Defendants made this request only in their reply brief and thereby deprived Plaintiff of an opportunity to be heard on its propriety.  *See* Fed. R. Civ. P. 201(e); *id.*, note to subdivision (e) ("Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of judicial notice and the tenor of the matter noticed."); *Reynolds v. Hedgpeth*, 472 Fed. App'x 595, 599 (9th Cir. 2012) (finding abuse of discretion where court failed to give party opportunity to respond to request for judicial notice).  Second, the earliest date that Defendants registered the domain phoenixcancer.com does not appear readily determinable from the receipt because it is not clear whether this purchase could have been, for example, a renewal of the domain name or a purchase of it from another person or entity affiliated with Defendant PCI.  *See* Wright & Miller, *Federal Prac. & Proc.* § 5106.1 (2d ed. 2011) ("If the source can only be used through an intermediary such as an expert witness or an interpreter, the court does not really rely on the source but on the intermediary.").  Moreover, even if the Court were to take judicial notice of the receipt and consider it conclusive as to the date of domain registration, dismissal of Plaintiff's claim for fraud would not be required because the date of domain registration does not conclusively disprove any element of the claim, but appears merely to be one way that Plaintiff intends to prove that Defendant Rosinski never intended to work for it "long term."

Defendants cite *Comerica Bank v. Mahmoodi* for their assertion that allegedly inducing behavior must predate conduct in reliance on that behavior.  *See* Docs. 18 at 15,

21 at 11.  It is true that the *Comerica* court relied in part on this temporal issue in reversing the trial court's grant of summary judgment to the plaintiff.  *See* 229 P.3d at 1036 ("It is undisputed that by the time Hadi [submitted the allegedly false representation,] Xeba had already borrowed $7,480,850.12, and Comerica's decision to lend that amount cannot therefore have been a result of reliance on the [representation.]").  This case does not compel dismissal of Plaintiff's complaint, however, which pleads multiple instances of allegedly false representations prior to the effective date of the Agreement.  The complaint alleges that in 2017 Defendant Rosinski and his wife planned to move to Arizona and establish their own medical practice and that Defendant Rosinski reached out to Plaintiff seeking employment in order to solicit away its employees and patients.  Doc. 14 ¶¶ 35-37.  Plaintiff also alleges that Defendant Rosinski registered the phoenixcancer.com domain name on December 12, 2017.  *Id.* ¶ 39.  Plaintiff alleges that, with these intentions, Defendant nonetheless represented to Plaintiff during a meeting in January 2018 that he wanted to add his practice to Plaintiffs for the "long term" and arranged to have a letter of recommendation sent to Plaintiff that month recommending Defendant Rosinski as a "long term" partner.  *Id.* ¶¶ 42-43.  Based on these representations of long term intent, Plaintiff alleges that it agreed to employ Defendant Rosinski under the Agreement.  *Id.* ¶ 44.  All of this allegedly happened before the effective date of the Agreement, and Plaintiff specifically incorporated these acts into its pleading of the fraudulent inducement claim.  *See id.* ¶ 74 (referencing paragraphs 35-43 and alleging materiality).  This is therefore not a case where no conduct that could have induced reliance took place before the date of reliance.

Nor does *McAlister v. Citicorp* compel a different result.  In *McAlister*, the court affirmed a grant of summary judgment for the defendant where the plaintiff's testimony established only that "an unknown someone in the bank intended to deceive him."  829 P.2d at 1260.  The court stated that "[f]raud can be based upon unfulfilled promises or expressions concerning future events only if statements regarding those events 'were made with the present intent not to perform.'"  *Id.*  This is exactly what Plaintiff's complaint

alleges — that Defendant Rosinski had a plan to open his own practice and, prior to initiating contact with Plaintiff, decided to seek employment with an established facility in order to learn about the market, establish a name presence, identify experienced employees to hire away, and identify patients to persuade to leave the established facility.  Doc. 14 ¶¶ 35-36.  These factual allegations plausibly show that Defendant Rosinski's assurances to Plaintiff were made with the present intent not to perform.[11]

### 2.     Defendant PCI.

Defendants argue that the claim for fraudulent inducement cannot be brought against PCI because the actions on which the claim is based predate its formation on July 13, 2018, and because the complaint does not allege any affirmative action by it. Doc. 18 at 14.

Plaintiff does not dispute that Defendant PCI is liable only for actions taken after its formation.  *See* Doc. 20 at 14 ("[Defendant PCI] is liable for the conduct of Dr. Steven Rosinski that occurred after the date of its formation."), at 17 ("[Defendant PCI] is liable for each payment made . . . to Dr. Steven Rosinski after it was established . . .").  The Court therefore need not decide whether Defendant PCI could plausibly be liable for the alleged torts of its incorporator prior to its creation.  To the extent that Plaintiff's complaint asserts liability of Defendant PCI prior to its formation, it will be dismissed.

Plaintiff's claim against Defendant PCI for Defendant Rosinski's statements allegedly inducing Plaintiff to continue his employment will not be dismissed.  Defendants provide no authority upon which the Court can conclude this is not a viable theory of fraud. And contrary to Defendant's argument that it cannot be liable for any acts of another, vicarious liability is available if the actor acts within the scope of employment.  *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title and Trust of Phoenix, Inc.*, 5 P.3d 249, 256

---

[11] Defendants do not respond to Plaintiff's argument that Defendant Rosinski's representations of his long term commitment after his hiring induced it to keep the Agreement in effect, instead focusing solely on whether Plaintiff was fraudulently induced to enter into the Agreement in the first place.

(Ariz. Ct. App. 2000) (vicarious liability of employer available where fraudulent conduct furthered its business).

### C.   Tortious Interference (Count V).

Defendants do not contend that Plaintiff has failed to adequately plead the elements of a tortious interference claim, arguing instead that the claim is barred by a two-year statute of limitations.  Doc. 18 at 6.  They argue that even the latest conduct alleged by Plaintiff took place on March 19, 2019, two years and nine months before Plaintiff filed this lawsuit on December 4, 2021.  *Id.*; *see also* Doc. 1.  Defendants also argue that Plaintiff knew of the conduct more than two years before filing suit because Plaintiff retained an attorney and sent a demand letter to Defendants on February 1, 2019, which made the same allegations as the complaint.  Doc. 18 at 6-7.

Plaintiff responds that the tortious interference did not occur only at the time when Defendants allegedly misappropriated patient records but continued each time Defendants treated and billed its former patients.  Doc. 20 at 8.  It is the "repeated treating and billing," Plaintiff argues, that causes its harm and "comprises the tortious inference alleged[.]"  *Id.*  Plaintiff asserts that the doctrine of continued violations should apply.  *Id.*  Plaintiff argues that Arizona law disfavors statute of limitations defenses, preferring to resolve cases on their merits, and when an injury is continuing in nature, the applicable statute of limitations begins to run only when the injury ends.  *Id.* at 9.

In reply, Defendants argue that application of the continuing violation doctrine is inappropriate because, although Plaintiff may suffer an ongoing injury, once a patient terminated their care with Plaintiff there is no longer any relationship with which Defendants could interfere.  Doc. 21 at 5.  Because Plaintiff merely suffers ongoing damages as a result of discrete acts, Defendants argue, application of the continuing violations doctrine is not warranted.  *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Claims for tortious interference must be "commenced and prosecuted within two years after the cause of action accrues[.]"  A.R.S. § 12-542; *Clark v. Airesearch Mfg. Co.*

*of Ariz., Inc.*, 673 P.2d 984, 987 (Ariz. Ct. App. 1983).  "[A] cause of action for tortious interference accrues when the plaintiff knew or reasonably should have known of the intentional interference with the plaintiff's business expectancy, resulting in its termination; and the plaintiff realized he or she was damaged by that termination." *Vazirani & Assocs. Fin., LLC v. Advisors Excel, LLC*, No. 1 CA–CV 12–0449, 2013 WL 3009363, at *3 (Ariz. Ct. App. June 13, 2013) (quoting *Dube v. Likins*, 167 P.3d 93, 98 (Ariz. Ct. App. 2007)).  A statute of limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  But the complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998).  Because a statute of limitations defense is an affirmative defense, the defendant bears the burden of proof in establishing its applicability.  *Est. of Page v. Litzenburg*, 865 P.2d 128, 135 (Ariz. Ct. App. 1993).

Plaintiff's complaint does appear to allege that Defendants interfered with its relationships with its patients primarily between November 2018 and March 2019.  But for statute of limitations purposes, the relevant inquiry is not simply when the interfering conduct took place, but "when Plaintiff knew or should have known that Defendants' alleged conduct had caused [its patients] to terminate [their] business relationships with Plaintiff."  *See Vazirani & Assocs. Fin., LLC*, 2013 WL 3009363, at *3.  The statute of limitations on Plaintiff's claim did not start running until Plaintiff's patients terminated care with Plaintiff and Plaintiff knew or should have known that Defendants' interference caused the termination.  While the demand letter Defendants argue they received from Plaintiff in February 2019 could bear on this question, the letter itself is not before the Court.  "And '[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury.'"  *Dube*, 167 P.3d at 99 (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)).  The Court will not dismiss the claim at this juncture.

The Court cannot, however, accept Plaintiff's argument that tortious interference is a continuing tort that persists as long as Defendants continue to treat its former patients. An element of a claim for tortious interference with business relationships is that the relationship was breached or terminated. *Id.* at 98. Plaintiff alleges that its relationship with the patients in fact ended. Doc. 14 ¶ 68 (alleging that Defendants "successfully solicited" at least 41 of Plaintiff's patients to "transfer their oncology care"). These facts do not support a continuing violation theory. *See*, *e.g.*, *McManus v. Am. Exp. Tax & Bus. Servs., Inc.*, 67 F. Supp. 2d 1083, 1089 (D. Ariz. Sept. 8, 1999) (considering claim for tortious interference and holding "no continuing tort arises from these facts"); *see also McNair v. Maxwell & Morgan PC*, 142 F. Supp. 2d 859, 867 (D. Ariz. Nov. 4, 2015) (observing that "discrete acts such as termination . . . do not implicate the continuing-violation doctrine") (internal alterations and quotations omitted). To the extent that Plaintiff's complaint alleges tortious interference by Defendants after its patients transferred their care, it will be dismissed. Defendants can reassert their statute of limitations argument on a more complete record at the summary judgment stage of this case.

### 1. Defendant PCI.

As with the other counts against Defendant PCI, Defendants argue that PCI is not a proper defendant because, first, it was not formed until July 13, 2018, and was "yet-to-be opened" in December 2018, and second, the complaint alleges affirmative conduct only by Defendant Rosinski and third parties, not by PCI. Doc. 18 at 14.

Defendant PCI is appropriately named as a defendant for Plaintiff's tortious interference claim. The allegedly interfering conduct underlying the claim took place after PCI was legally formed, and entities can be vicariously liable for the tortious acts of their employees or officers. *Meyer*, 537 U.S. at 285; *Carey v. Maricopa Cnty.*, No. cv-05-2500-PHX-ROS, 2009 WL 750225, at *10-11 (D. Ariz. Mar. 10, 2009) (holding that plaintiff raised genuine issue of material fact as to vicarious liability of entity for tortious

interference).   As discussed in more detail above, Plaintiff has adequately pled that Defendant Rosinski was acting on behalf of Defendant PCI.

   **D.     Breach of Contract (Count IV).**

   Under Arizona law, a claim for breach of contract has three elements: (1) the existence of a contract between the plaintiff and defendant; (2) breach of the contract by defendant; and (3) resulting damage to the plaintiff.   *Frank Lloyd Wright Found. V. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. Mar. 15, 2010).

   Defendant Rosinski does not argue that Plaintiff has not shown the existence of a contract or damages, and instead focuses only on whether Plaintiff has shown breach.  *See* Doc. 18 at 12-14.  Defendant Rosinski argues that because the Agreement did not contain a non-compete or non-solicitation clause, his actions in establishing a competing business and allegedly soliciting employees and patients could not have breached the Agreement. *Id.* at 12.  Defendant Rosinski also argues that the confidentiality clause of the Agreement is "grammatically nonsensical" and does not support a breach of contract claim because it only required him to "abide[] by the applicable privacy laws, rules and regulations, during the time he was working for Plaintiff" and that Plaintiff has not alleged any such failures. *Id.* at 12-13.[12]  Defendant Rosinski again emphasizes that Plaintiff does not allege that he personally took medical records, only that third parties did.  *Id.* at 13.  Defendant argues that Plaintiff only describes one federal privacy law, HIPAA, in its complaint and that his actions in calling his patients to inform them that he was leaving Plaintiff's employ did not violate HIPPA.  *Id.*

---

[12] The complaint alleges breach of the confidentiality clause of the Agreement, which states as follows:

> While providing services to Employer, physician shall abide by all state and federal privacy laws, rules and regulation confidential information regarding the records of Employer, patients, plans, or any other aspect of Employer which it considers to be confidential or secret including compensation rates.

Docs. 14 ¶ 90, 14-1 at 2-3.

Plaintiff responds that Defendant Rosinski's reliance on the absence of a non-compete clause is irrelevant because the breach of contract it alleges is that he, with the help of co-conspirators, "unlawfully spirit[ed] away . . . confidential patient files" in violation of the confidentiality clause of the Agreement.  Doc. 20 at 11.  "By taking records protected by HIPAA and other medical and financial records that [it] maintained as confidential," Plaintiff argues, Defendant Rosinski breached the confidentiality clause.  *Id.*

In reply, Defendant Rosinski argues that because Plaintiff's misappropriation claims address his alleged misappropriation of patient records, it cannot also allege that conduct as a breach of the confidentiality clause.  Doc. 21 at 7.  Defendant reasserts his prior argument that Plaintiff asserted no act of misappropriation by Defendant himself, only by third parties.  *Id.* at 8.  Defendant also argues that "Plaintiff completely ignores the fact that the confidentiality clause terminates with the termination of employment" and bases its contract claims on conduct that took place after he left Plaintiff's employment.  *Id.*

Plaintiff has plausibly pled a breach of contract by Defendant Rosinski.  Plaintiff's complaint alleges that the Agreement was in effect between it and Defendant Rosinski.  Doc. 14 ¶ 89.  Plaintiff alleges that the confidentiality clause was part of the Agreement and that patient records fell within its scope and were protected by HIPAA.  *Id.* ¶¶ 90-92.  Plaintiff also alleges that, by misappropriating the patient records, Defendant Rosinski breached the confidentiality clause of the Agreement.  *Id.* ¶ 93.  Finally, Plaintiff alleges damages.  *Id.* ¶ 94.

Defendant Rosinski's argument that Plaintiff cannot assert a breach of contract on these facts absent a non-compete or non-solicitation clause misunderstands the conduct Plaintiff alleges breached the Agreement.  Plaintiff does not allege in Count IV that Defendant Rosinski's opening of his own practice or solicitation of its employees and patients itself breached the terms of the contract.  Rather, Plaintiff argues that Defendant Rosinski breached the confidentiality clause by improperly obtaining and misappropriating patient records.  To the extent that the confidentiality clause only prohibits failing to abide by state and federal privacy laws, Plaintiff alleges that the patient records were protected

by HIPAA and that Defendants' use of the records violated the DTSA and AUTSA. Defendant makes no effort to explain why actions that allegedly violate these federal and state laws would not constitute a breach of the confidentiality clause. Additionally, to the extent that Defendant repeats his unsupported position that he cannot possibly be liable for the acts of third parties which Plaintiff plausibly alleges were done at his direction, the Court again rejects it.

The Court is not persuaded by Defendants' argument that Plaintiff has not stated a breach of contract because the confidentiality clause only applied while he was employed by Plaintiff. The acts of misappropriation that form the basis of the claim all appear to have happened before Defendant left Plaintiff's employ. Plaintiff alleges that its former employees improperly obtained patient records at Defendant's direction in November and December of 2018. Doc. 14 ¶¶ 56-58. Defendant did not give his notice of termination of the Agreement until January 4, 2019, and his last day providing services under the Agreement was January 18, 2019. *Id.* ¶¶ 61, 69.

The Court also rejects Defendants' argument that acts of misappropriation cannot also support a breach of contract claim. It is not clear to the Court, and Defendant cites nothing to explain, why a plaintiff could assert only one cause of action when a defendant's conduct is prohibited by both a contract and independent statutory law. Indeed, claims for misappropriation and breach of contract based on the same facts are routinely asserted. *See, e.g., Modular Mining Sys., Inc. v. Jigsaw Tech., Inc.*, 212 P.3d 853, 860-61 (Ariz. Ct. App. 2009) (affirming fee award based on "interwoven" claims for breach of a confidentiality clause of an employment agreement and misappropriation of trade secrets and observing that "these claims were based on the same set of facts"); *EMP Forwarding LLC v. Prieto*, No. 1 CA-CV 19-0392, 2020 WL 1684024, at *5 (Ariz. Ct. App. Apr. 7, 2020) (similar); *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 (D. Ariz. July 30, 2010) (recounting bench trial where the defendant was found liable for misappropriation of trade secrets and breach of a confidentiality agreement based on the same facts).

Moreover, Defendant's repeated assertion that the confidentiality clause is "grammatically nonsensical" does not support its motion to dismiss.  Contractual language that is susceptible to more than one interpretation is ambiguous, and giving effect to the intention of the parties in that context may require consideration of extrinsic evidence and fact finding.  *See In re Est. of Lamparella*, 109 P.3d 959, 963 (Ariz. Ct. App. 2005).  This type of fact finding is inappropriate on a motion to dismiss.  Because the Court has already found that Plaintiff has plausibly pled a claim for breach of contract, however, it makes no findings regarding the ambiguity of the confidentiality clause of the Agreement at this stage of the litigation.

**E.     Breach of the Duty of Good Faith and Fair Dealing (Count VI).**

Defendant Rosinski argues that Plaintiff cannot bring a claim for breach of the implied covenant of good faith and fair dealing because "[s]uch a claim depends entirely upon a breach of the underlying contract, and . . . there was no breach of contract."  Doc. 18 at 14.

Plaintiff responds that the implied covenant arises by virtue of a contractual relationship and that the implied covenant can be breached even in the absence of a breach of an express provision of the contract if a party is denied the reasonably expected benefits of the agreement.  Doc. 20 at 12 (citing *IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1187-88 (D. Ariz. 2019).  Plaintiff alleges that the implied covenant imposed on Defendant Rosinski a duty to exert his best efforts for the services described in the Agreements for the benefit of Plaintiff, to act honestly in all dealings with Plaintiff in all matters material to the Agreement, and to not engage in any conduct that would harm the financial or reputational interests of Plaintiff.  *Id.* at 11-12.  Plaintiff also alleges Defendant Rosinski breached the implied covenant by failing to exert his best efforts on its behalf and instead opening a competing facility and by misleading Plaintiff as to his intentions to do so and to poach its employees and patients.  *Id.* at 12.

In reply, Defendant argues that the duties Plaintiff alleges are imposed on it by the implied covenant of good faith and fair dealing are "pure fancy, with no basis of any sort

in any law." Doc. 21 at 8.  Defendant asserts that "Plaintiff is not permitted to define for itself whatever it believes should have been included under any implied covenant" and that the duties it asserts are "naked legal conclusions that cannot be relied upon in addressing" its motion to dismiss.  *Id.*  In order to demonstrate a breach, Defendant argues, Plaintiff would have to demonstrate that he did not actually perform the work required by the Agreement, but that Plaintiff alleges no improper treatment of patients by Defendant.  *Id.* at 9.  Defendant also argues that his alleged misleading of Plaintiff is addressed by other claims and therefore should not be the subject of contract claims.  *Id.*

It is "firmly established" that in Arizona "[t]he law implies a covenant of good faith and fair dealing in every contract."  *Rawlings v. Apodaca*, 726 P.2d 565, 569-70 (Ariz. 1986).  "Such implied terms are as much a part of a contract as are the express terms." *Wells Fargo Bank*, 38 P.3d at 28.  "The duty arises by operation of law but exists by virtue of a contractual relationship."  *Id.*  The implied covenant is breached when a party denies the other party the "reasonably expected benefits of the agreement."  *Nolan v. Starlight Pines Homeowner's Ass'n*, 167 P.3d 1277, 1284 (Ariz. Ct. App. 2007); *see also Rawlings*, 726 P.2d at 569 ("The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."); *Mastro Grp. LLC v. Am. Rest. Enters., Inc.*, Nos. 1 CA-CV 06-0456, 1 CA-CV 06-0717, 2008 WL 4017948, at *5 (Ariz. Ct. App. Mar. 6, 2008) ("The implied covenant prevents a party to a contract from doing 'anything that will injure the rights or interests' of the other party.") (quoting *Diagnostic Lab., Inc. v. PBL Consultants*, 666 P.2d 515, 519 (Ariz. Ct. App. 1983)).

Defendant's assertion that a claim for breach of the implied covenant "depends entirely upon a breach of the underlying contract" is mistaken.  *See* Doc. 18 at 14.  "A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement."  *Nolan*, 167 P.3d at 1284; *see also Wells Fargo Bank*, 38 P.3d at 29 ("The duty of good faith extends beyond the written words of the contract. . . .  [A] party may

1   nevertheless breach its duty of good faith without actually breaching an express covenant
2   in the contract.").

3          Whether Defendant Rosinski breached the implied covenant depends on what
4   Plaintiff's "justified expectations" and "reasonably expected benefits" of the Agreement
5   were.  *Mastro Grp., LLC*, 2008 WL 4017948, at *5; *Elec. Payment Providers, Inc. v.*
6   *Kennedy*, No. 1 CA-CV 20-0382, 2021 WL 6087642, at *7 (Ariz. Ct. App. Dec. 23, 2021).
7   Plaintiff has pled specific duties it considers to have been reasonably expected under the
8   Agreement, including that Defendant Rosinski would exert his best efforts for its benefit,
9   act honestly in dealings with it, and not engage in conduct that would harm its financial or
10  reputational interests.  Doc. 14 ¶ 100.  Contrary to Defendant's assertion that Plaintiff
11  created these duties "out of whole cloth," duties of loyalty and honesty have been implied
12  in similar circumstances.  *See*, *e.g.*, *Orca Commc'ns Unlimited LLC v. Noder*, 314 P.3d 89,
13  97 (Ariz. Ct. App. 2013) (finding plausible claim for breach of covenant of good faith and
14  fair dealing on basis of duty of loyalty where employee opened a competing business and
15  solicited co-workers to join it while working for employer); *Diagnostic Lab., Inc.*, 666 P.2d
16  at 519 ("Subterfuges and evasions violate the obligation of good faith in performance even
17  if the actor believes his conduct to be justified.") (citing Restatement of Contracts 2d,
18  § 205, comment (d)).  Whether these duties are implied here "is a question of fact for the
19  jury."  *Elec. Payment Providers, Inc.*, 2021 WL 6087642, at *7.

20         Finally, the Court rejects Defendant's argument that because some of Plaintiff's
21  other claims also rest on his allegedly misleading actions, Plaintiff cannot assert another
22  claim on the same factual basis.  *See* Doc. 21 at 9.  This is simply an incorrect assertion of
23  pleading requirements.  Plaintiff has plausibly pled a claim for breach of the implied
24  covenant of good faith and fair dealing against Defendant Rosinski.
25  / / /
26  / / /
27  / / /
28  / / /

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 18) is **granted** insofar as Plaintiff's complaint asserts Count I against Defendant PCI for actions taken prior to its formation and Count V against Defendants for actions taken after the relevant business relationships were terminated.  In all other respects the motion is **denied**.

Dated this 16th day of May, 2022.

David G. Campbell
Senior United States District Judge